UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


BRAD VAMPLEW,

     Plaintiff,

vs.                                                                                    Case No. 12-14561

WAYNE STATE UNIVERSITY BOARD                              HON. AVERN COHN
OF GOVERNORS, et al.,

     Defendants.

_____/

**MEMORANDUM AND ORDER GRANTING NON-PARTY DETROIT MEDICAL
CENTER'S MOTION TO QUASH SUBPOENAS (Doc. 28)**

I.  Introduction

This is essentially a discrimination case.  Plaintiff Brad Vamplew (Vamplew) is

suing defendants the Wayne State University Board of Governors (Wayne State) and

several faculty members of the Wayne State University College of Nursing.  Vamplew

was removed from the nursing program at Wayne State after he engaged in an

allegedly "unsafe practice" in a clinical setting.  The incident took place on April 5, 2012

and involved a patient at the Rehabilitation Institute of Michigan (RIM), which is part of

the Detroit Medical Center.  Vamplew alleges that a RIM employee reported the unsafe

practice to an instructor at Wayne State's Nursing program.  Vamplew further alleges

that his removal was done without prior warnings and in violation of written policies.

Vamplew was also diagnosed with attention deficit hyperactivity disorder and given

accommodations during his time in the program.  The case is in the discovery phase.

Before the Court is a motion to quash subpoenas by non-party Detroit Medical

Center (DMC).  For the reasons that follow, the motion will be granted.

## II.  Background

### A.  The Complaint

As noted above, Vamplew was dismissed from the nursing program at Wayne State after he allegedly engaged in an "unsafe practice" in a clinical setting on April 5, 2012.

Vamplew filed a thirteen-count complaint alleging that defendants (1) discriminated against his on the basis of a disability (Counts I, II, and III); (2) retaliated against him for seeking an evaluation and accommodation for his disability and for contesting his dismissal from the nursing program (Counts IV, V, and VI); (3) violated his right to due process in violation of the United States Constitution and Michigan Constitution (Counts VII and IX); (4) violated his right to equal protection of the laws in violation of the United States Constitution and Michigan Constitution (Counts VIII and X); (5) breached a contract with him (Count XI); (6) intentionally inflicted emotional distress (Count XII); and (7) tortiously interfered with a contract or advantageous business relationship or expectancy (Count XIII).

### B.  Discovery Requests to DMC

According to DMC, Vamplew has issued six discovery subpoenas to DMC.  The first subpoena was issued February 14, 2013 and outlined 31 paragraphs of requested documents.  The DMC says it responded to or resolved the requests with Vamplew.

Three subpoenas are now at issue.  The first subpoena was issued on May 2, 2013 (the May 2 subpoena).  It asks for medical records of the patient involved in the unsafe practice from March 12, 2013 to March 23, 2013.  The second subpoena was

issued on May 9, 2013 (the May 9 subpoena).  It asks for medical records from four

patients for dates in January and February of 2012.  The third subpoena was issued on

May 17, 2013 (the May 17 subpoena).  It asks for documents outlined in 11 paragraph

requests.

DMC objects to all of the subpoenas, contending they violate privacy laws, seek

irrelevant information and are burdensome.  Wayne State has joined in the motion,

contending that DMC has already complied with prior requests and the information

sought in the current subpoenas is privileged and irrelevant.

III.  Applicable Law

A subpoena issued under Rule 45 is "subject to the general relevancy standard

applicable to discovery under [Rule 26(b)(1)]."  Syposs v. U.S.A., 181 F.R.D. 224, 226

(W.D.N.Y. 1998).  Rule 26 (b)(1) provides that a party may obtain discovery "regarding

any matter, not privileged, that is relevant to the claim or defense of any party."

Fed.R.Civ.P. 45 (c)(3)(A)(ii), (iii), and (iv) states in relevant part:

> On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
>
> (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or
>
> (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
>
> (iv) subjects a person to undue burden.

Fed.R.Civ.P. 45 (c)(3)(B) states in relevant part:

3

If a subpoena

(I) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

## IV.  Analysis

### A.  The May 2 Subpoena

#### 1.  Parties' Arguments

Vamplew seeks the March 2012 Sinai-Grace Hospital records of the patient involved in the April 5th incident at RIM.  DMC says that the records are not relevant and the subpoena was not issued with the proper HIPPA authorization.  Vamplew says that subpoena seeks medical records that are relevant because the Wayne State instructor who reported the unsafe practice indicated that at the time of the April 5th incident the patent had "hip precautions still in place" following a procedure at Sinai-Grace.  The RIM medical records, however, contain no indication of a hip precaution in place. Therefore, Vamplew is seeking the Sinai-Grace medical records to determine if a hip precaution was in fact in place.  DMC responds, stating that when Sinai-Grace transferred the patient to RIM, "it transferred its medical history, and all applicable medical orders, with him.  Therefore, even if relevant, the answer to [Vamplew's]

4

question lies in the RIM records" which were previously produced.

## 2. Resolution

Putting aside HIPPA issues, based on DMC's representation, it would appear that Vamplew has all of the medical records which exist.  In other words, the patient's medical records from Sinai-Grace are included in his RIM records.  If those records do not have anything in them about a hip precaution, Vamplew then has his answer.  There is no need from DMC to respond to this request.

## B.  The May 9 Subpoena

### 1.  Parties' Arguments

The May 9 subpoena seeks the medical records for five 24 hour periods of four patients that Vamplew treated as a nursing student at Receiving Hospital.  DMC again says the information is private and the request is not HIPPA compliant.  DMC also says it is irrelevant because the records of what happened with those four patients have nothing to do with the April 5th incident and are nowhere mentioned in Vamplew's complaint.

Vamplew says the records are relevant because the same Wayne State instructor also told Vamplew prior to his dismissal that he never charted into the medical records on time while he was in a clinical class at Receiving Hospital.  VAmplew denies this.  VAmplew also states that his alleged lack of organization ans prioritization was listed on his failure notification to support his dismissal from the program.  Vamplew says this information is relevant to test the instructor's credibility.

DMC responds that Vamplew's contention regarding relevance is too attenuated/

First, any criticism of Vamplew's charting is not alleged in the complaint.  Second, it is

mere speculation to conclude that the alleged criticism of his charting was the basis for

the cited lack or organization and prioritization within his "failure notification."  Third,

DMC counsel says that it has been informed that the requested documents would not

inform Vamplew regarding charting.  DMC counsel states: "The 'I-View' and 'Nurse

Note' patient records do not state which charting was done timely, and which was not."

## 2.  Resolution

Based on DMC's representation, there is no need to enforce the subpoena.  The

records sought simply do not contain the information Vamplew had hoped to find in

order to test the credibility of the instructor.

## C.  The May 17 Subpoena

### 1.  Parties' Arguments

The May 17 Subpoena seeks documents outlined in 11 paragraphs.  DMC says

the documents requested are (1) duplicative with the February 14 Subpoena, (2) not

stated with particularity, and (3) irrelevant to the claims and defenses asserted in the

case.  Vamplew says all the information is relevant.

### 2.  Resolution

#### a.  Paragraphs 1, 3, 4 - Documents Regarding Vamplew's Ban from the DMC and Related Issues

Vamplew's ban from the DMC, which came to light when Vamplew and counsel

appeared at the DMC for depositions or two RIM employees, is not relevant to any of

the claims in the case.  While Vamplew says that the information regarding his banning

6

goes to his damages and the credibility of the instructor, it is too attenuated.  DMC does not have to respond to these requests.

b.  Paragraphs 2, 9, and 10 - Communications between DMC and Wayne State

In paragraphs 2 and 9, Vamplew ask for various written communications, if any, between DMC and Wayne State personnel.  In paragraph 10, Vamplew seeks the "identity of each and every person employed by WSU who accessed the EMR of [the patient] on April 5, 2012."  DMC says paragraphs 2 and 9 do not contain time parameters nor identify the subject matter of the requested email and are therefore facially overbroad.  DMC also says that all of the documents are available from Wayne State; therefore, it is burdensome to ask a non-party for the information.

Vamplew says that the email requests are not burdensome and seems to suggest that Wayne State may have erased emails prior to this litigation.

DMC has the better view.  The requests are overbroad and the information, if any, can be obtained from Wayne State.

c.  Paragraphs 2 - 7 - Patient Medical Records

DMC says that on April 12, 2013, RIM mailed 532 pages of medical records responsive to paragraphs 5, 6, and 7.  While Vamplew believes the medical records are incomplete, DMC has represented that this is the full medical records.  DMC has offered to certify the same.

DMC has complied.  There is no need for DMC to respond further to the requests in paragraphs 5, 6, and 7.

As to paragraph 8, Vamplew asks for "DMC policy regarding documentation of

patient safety issues and/or patient care concerns that occur at DMC." In paragraph

11, Vamplew asks for "any documents showing the meaning of any [sic] all codes and

or coded entries contain within the EMR."

DMC says, correctly, that "patient issue and/or concerns" nor RIM's "coded

entries within the EMR" are not the subject of any allegation in the complaint or Wayne

States defenses. Vamplew is not suing DMC. DMC does not have to respond to

paragraphs 8 or 11.

## D.  Sanctions

Both DMC and Vamplew request sanctions. The Court declines to award

sanctions.

## V.  Conclusion

As explained above, as to the three subpoenas, (1) Vamplew either already has

the requested information, (2) Vamplew may obtain the information from Wayne State,

(3) Vamplew's request is overbroad or seeks irrelevant information. Accordingly, DMC's

motion to quash is GRANTED.

SO ORDERED.

 S/Avern Cohn
UNITED STATES DISTRICT JUDGE

Dated:  June 20, 2013


I hereby certify that a copy of the foregoing document was mailed to the attorneys of
record on this date, June 20, 2013, by electronic and/or ordinary mail.

 S/Sakne Chami
Case Manager, (313) 234-5160