UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRAD VAMPLEW,

    Plaintiff,

vs.                                                             Case No. 12-14561

WAYNE STATE UNIVERSITY BOARD          HON. AVERN COHN
OF GOVERNORS, et al.,

    Defendants.
_____/

## ORDER DENYING NON-PARTY DETROIT MEDICAL CENTER'S MOTION FOR PROTECTIVE ORDER (Doc. 45)[1]

I.

This is essentially a discrimination case. Plaintiff Brad Vamplew (Vamplew) is suing defendants the Wayne State University Board of Governors (Wayne State) and several faculty members of the Wayne State University College of Nursing. Vamplew was removed from the nursing program at Wayne State after he engaged in an allegedly "unsafe practice" in a clinical setting. The incident took place on April 5, 2012 and involved a patient at the Rehabilitation Institute of Michigan (RIM), which is part of the Detroit Medical Center. Vamplew alleges that a RIM employee reported the unsafe practice to an instructor at Wayne State's Nursing program. Vamplew further alleges that his removal was done without prior warnings and in violation of written policies. Vamplew was diagnosed with attention deficit hyperactivity disorder and given

---

[1]The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

accommodations during his time in the program.  The case is in the discovery phase.

Non-party Detroit Medical Center (DMC) filed a motion for protective order regarding the deposition of Dr. Michael M. Ajluni.  DMC asks for either an order preventing the deposition of Dr. Ajluni or, if the deposition is allowed to go forward, DMC asks that Dr. Ajluni be compensated beyond the statutory witness fee.

For the reasons that follow, the motion is DENIED.

II.

The DMC has cooperated with plaintiff's prior discovery requests in this case. Namely, the DMC has provided its of medical records of the patient involved in the incident of April 5th.  It also has responded to a comprehensive subpoena.[2]  Recently, on July 15, D.C. produced for deposition both of the D.C. employees who were involved in the reporting of the incident.

On July 3, 2013, plaintiff notified DMC of his interest in deposing Dr. Michael M. Ajluni.  Dr. Ajluni is the Medical Director of Brain Injury Rehabilitation at RIM, and was the attending physician for the subject patient on April 5th.  Although plaintiff has not issued a subpoena for the nonparty deposition under Rule 45, plaintiff did provide DMC with a list of the questions he has for Dr. Ajluni.  These questions are:

1. Does the medical record indicate that the patient received intravenous (IV), Morphine at any time on April 5, 2012?

2. Does the medical record indicate that the patient had "hip precautions" in place at any time on April 5, 2012?

3. Would  the repair of a mildly displaced fracture of the distal

---

[2]DMC moved to quash three other subpoenas issued by plaintiff.  The Court granted DMC's motion (Doc. 38).  The Court also denied reconsideration.  (Doc. 42).

    metadiaphysis require that "hipprecautions" beput in place?

4. What was the medical significance of the plaintiff's [sic] Hbg level of10.1 on AprilS, 2012 [sic].

5. What was the medical significance of the plaintiff's [sic] Hbg level of10.1 on April 5, 2012 as it relates to the patient's ability to tolerate physical therapy and/or nursing interventions?

6. Does the medical record indicate that the patient had difficulty with novel tasks?

7. Would charting into the medical record a patient's blood pressure, oxygen saturation, pain score, and or meal consumption be typical nursing actions?

8. How long has the patient been treated by the doctor?

9. Regarding the team conference, as shown on page 480 of the EMR, is there any indication that anything about the patient's medical condition prevented him from being discharged on April 4, 2012?

10. What is the purpose of the communication order on page 378 of the EMR?

11. Does the medical record indicate that the patient could sign himself off the 4th floor?

12. [Sic] Does the medical record indicate that the patient could sign himself off the 4th floor?

DMC has moved for a protective order, objecting to the substance of the testimony sought and plaintiff's refusal to compensate Dr. Ajluni beyond the standard witness fee under 28 U.S.C. § 1821. Each request is addressed in turn below.

III.

"Courts . . .have held that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26." Hendricks v. Total Quality Logistics, LLC, 275 F.R.D. 251 (S.D. Ohio 2011). See also Cleveland Clinic Health System-East Region v. Innovative Placements, Inc., 2012 U.S. Dist. LEXIS 7275 (N.D. Ohio Jan. 23,

2012)

Rule 26(b)(l) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense .. .. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Moreover, Rule 26(b)(2) requires the Court to limit discovery if it should find that the discovery is "cumulative or duplicative, or can be obtained from some other source that is.. .less burdensome, or less expensive...," or "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."

The DMC argues that Dr. Ajluni's testimony is irrelevant. The Court disagrees. Given the broad expanse of discovery, including that Dr. Ajluni was the attending physician to the patient involved in the incident, plaintiff has the right to depose Dr. Ajluni.

IV.

The compensation for a witness is $40.00 for attendance at trial or deposition. See 28 U.S .C. § 1821(b). Regarding an experts' trial preparation, the rule provides: "Unless manifest injustice would result, the court must require that the party seeking discovery: (I) pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) or (B); and (ii) for discovery under (B), also pay the other party a fair portion of the fees and expenses it reasonably incurred in obtaining the expert's facts and opinions." Fed. R. Civ. P. 26(b) (4)(C). DMC says that Dr. Ajluni should be

compensated along the lines as an expert witness. Plaintiff says he is entitled to only the $40.00 statutory fee.

Although Dr. Ajluni has not been identified as an expert, that does not preclude a finding that he is entitled to additional compensation. See Snook v. County of Oakland, 2009 WL 928753, * 2 (E.D. Mich. Mar. 31, 2009). However, the questions posed to Dr. Ajluni show that he is being called as a fact witness, not an expert witness. He is not being deposed as a expert witness. As such, he is entitled to the same compensation as any other fact witness–at the statutory rate.

SO ORDERED.

          S/Avern Cohn
          AVERN COHN
          UNITED STATES DISTRICT JUDGE

Dated:  September 5, 2013

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, September 5, 2013, by electronic and/or ordinary mail.

          S/Sakne Chami
          Case Manager, (313) 234-5160