## UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Deborah S. Hunt<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: August 07, 2015

Mr. Daniel B. Tukel
Butzel Long
41000 Woodward Avenue
Stoneridge West
Bloomfield Hills, MI 48304

Mr. Brad Vamplew
13716 Leroy Street
Southgate, MI 48195

Re: Case No. 14-2070, *Brad Vamplew v. Wayne State University Board, et al*
Originating Case No. : 2:12-cv-14561

Dear Sirs,

  The Court issued the enclosed (Order/Opinion) today in this case.

                    Sincerely yours,

                    s/Laura A. Jones
                    Case Manager
                    Direct Dial No. 513-564-7023

cc: Mr. David J. Weaver

Enclosure

Mandate to issue

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

No. 14-2070

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| BRAD VAMPLEW, ) | **FILED** |
| ) | Aug 07, 2015 |
| Plaintiff-Appellant, ) | DEBORAH S. HUNT, Clerk |
| ) | |
| v. ) | ON APPEAL FROM THE UNITED |
| ) | STATES DISTRICT COURT FOR |
| WAYNE STATE UNIVERSITY BOARD OF ) | THE EASTERN DISTRICT OF |
| GOVERNORS, dba Wayne State University, a ) | MICHIGAN |
| public university, et al., ) | |
| ) | |
| Defendants-Appellees, ) | |
| ) | |
| and ) | |
| ) | |
| KATHERINE ZIMNICKI, et al., ) | |
| ) | |
| Defendants. ) | |

O R D E R

Before: GUY, CLAY, and STRANCH, Circuit Judges.

Brad Vamplew, proceeding pro se, appeals the district court's order granting summary judgment in favor of the defendants in his action challenging his dismissal from the nursing program at Wayne State University ("WSU"). This case has been referred to a panel of the court that, upon examination, unanimously agrees that oral argument is not needed. Fed. R. App. P. 34(a).

Brad Vamplew is a former student in WSU's College of Nursing. During the 2012 winter term, Vamplew was enrolled in NUR 3020, a course taught by Mary Zugcic. In order to pass NUR 3020, students needed to pass both the classroom and the clinical portions of the

course. The syllabus for the class stated, "Satisfactory completion of the clinical component of this course is dependent upon <u>passing all the identified critical behaviors</u>," which included, inter alia, "[p]rovid[ing] safe physical care for patients with chronic illness." The College of Nursing Handbook advised that "[a] student may be excluded from the College of Nursing for unsafe practice and/or unethical conduct in the program without having been previously warned."

Vamplew's NUR 3020 clinical group was assigned to the Rehabilitation Institute of Michigan ("RIM"). On April 5, 2012, Vamplew was assigned to "Patient G," who had been admitted to RIM with a traumatic brain injury. On that day, Patient G was post-surgery for repair to a leg fracture and was taking morphine. He was also using a full-leg knee immobilizer, which prevented him from bending his knee, and a wheelchair and was on non-weight bearing restrictions. Hospital records for Patient G indicate that he had a history of depression, schizophrenia, bipolar disorder, and drug abuse; was at risk for falls and injury; and suffered from cognitive impairment. According to Katie McSween May, a physical therapist at RIM, Patient G had "safety awareness issues" and "needed reminders of some of the precautions he needed to take for himself such as non-weight[]bearing on his left leg."

On April 12, 2012, May reported to Zugcic that, on April 5, 2012, Vamplew had left the unit with Patient G and taken him to the vehicle in the lobby that was used by patients and their therapists to practice car transfers. May believed that this presented a "serious safety issue" because Vamplew had not been trained to assist patients with such transfers. Zugcic discussed the incident with Vamplew, advised him that it was very serious, and told him to submit a written statement to her. Vamplew submitted a statement that day, but Zugcic gave it back to him and told him that he should submit a more formal statement. Vamplew submitted a new statement the following day.

After several days, Zugcic made the decision that Vamplew would fail NUR 3020 because he had engaged in an unsafe patient practice. According to Zugcic, "Vamplew failed to adequately assess the patient to take information that he should have gained in his assessments in order to come up with a plan of care for the patient, and he performed interventions that were inappropriate." She stated that she decided to fail him for unsafe behavior rather than for failure

to meet a critical course objective because "the incidents . . . were significant enough, and were blatantly unsafe, and indicated that his practice was not safe." She stated, "My judgment was that I had no reason to believe that he had the insight or ability to apply his assessments in a safe manner to planned nursing care." Pursuant to the College of Nursing's policy, Vamplew's failure of NUR 3020 for an unsafe practice resulted in his exclusion from the nursing program.

After unsuccessfully challenging his exclusion through WSU's internal appeals process, Vamplew commenced this action in the district court. In his complaint, Vamplew alleged that, in July 2011, he was diagnosed with Attention Deficit Hyperactivity Disorder, Combined Type, by WSU and granted the following accommodations: (1) extended time for taking tests; (2) examinations in a distraction-free environment; (3) use of a digital voice recorder in class; (4) copies of overheads; and (5) a volunteer note-taker. He stated that, in NUR 3020, Zugcic initially granted the accommodations but, after he scored a 100% on his first test, she told Vamplew that he did not need copies of the slides used in class and told him that he should be able to take notes in class. Vamplew further alleged that Zugcic frequently referred to him as "special," told him that he gave the impression that he was not paying attention, and demanded that he turn in his assignments at the end of the clinical day while allowing other students to e-mail them later in the day from home. Vamplew stated that he complained to Zugcic that she was denying him his required accommodations and later complained to the Student Disability Liaison, a Dean of the College of Nursing, and other officials at the university. Vamplew alleged that, shortly after complaining about the lack of accommodations, he was given a failing grade in NUR 3020 for an unsafe practice and excluded from the nursing program.

Vamplew raised claims alleging disability discrimination and retaliation under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213, the Rehabilitation Act, 29 U.S.C. § 794, and the Persons with Disabilities Civil Rights Act ("PWDCRA"), Mich. Comp. Laws §§ 37.1101-37.1607; deprivation of due process and equal protection under 42 U.S.C. § 1983 and the Michigan constitution; and breach of contract, tortious interference with contract, and intentional infliction of emotional distress under Michigan common law. Vamplew named as defendants: (1) the Board of Governors of WSU; (2) David J. Strauss, WSU Dean of

Students; (3) Barbara K. Redman, Dean of the WSU College of Nursing; (4) Cynthia Redwine, Assistant Dean for Student Affairs; (5) Felicia Grace, Academic Services Officer IV; (6) Mary Zugcic; and (7) Katherine Zimnicki, instructors in the WSU College of Nursing. Vamplew sued all of the individual defendants in both their official and individual capacities. Vamplew sought compensatory, exemplary, and punitive damages and injunctive relief.

Following discovery, Vamplew agreed to dismiss his disability discrimination claims under federal and state law, all of the state law tort claims, and any claim against Zimnicki in her official capacity, leaving his claims of disability retaliation under state and federal law and his due process and equal protection claims under state and federal law. The defendants filed a motion to dismiss the complaint for failure to state a claim or for summary judgment, raising several grounds for dismissal. The district court granted the defendants' motion, holding that Vamplew failed to allege a valid constitutional claim and failed to establish a claim for disability retaliation under the ADA, the Rehabilitation Act, or the PWDCRA.

Vamplew then filed a timely Federal Rule of Civil Procedure 59(e) motion, seeking reconsideration of the grant of summary judgment on his claims of disability retaliation and arguing that there was "a genuine dispute as to whether [Zugcic] was motivated by retaliatory intent or by reasoned academic judgment when she cho[]se to fail [Vamplew] rather than engage in remediation or failure with the ability to retake the class." The district court denied the motion.

Vamplew now appeals the district court's judgment. He challenges only the district court's grant of summary judgment as to the disability retaliation claims under federal and state law. He argues that the question of

> what motivated [Zugcic] to choose failure and exclusion from the college over the other options she admitted that she had[] was a fact question for the jury, where the instructor submitted numerous knowingly false statements of fact to the university in support of the plaintiff's failure and exclusion from the college.

He further contends that the district court made incorrect factual findings, failed to construe the facts in the light most favorable to him, and failed to accept his well-pleaded allegations as true.

Case 2:12-cv-14561-AC-MAR ECF No. 104-2 filed 08/07/15 PageID.1636 Page 6 of 9 (6 of 9)

No. 14-2070
- 5 -

We review a district court's grant of summary judgment de novo, viewing the facts in the light most favorable to the non-moving party. *Flagg v. City of Detroit*, 715 F.3d 165, 178 (6th Cir. 2013). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Estate of Smithers ex rel. Norris v. City of Flint*, 602 F.3d 758, 761 (6th Cir. 2010).

Vamplew's retaliation claims under the ADA, the Rehabilitation Act, and the PWDCRA are all analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Thaddeus-X v. Blatter*, 175 F.3d 378, 386-87 (6th Cir. 1999) (en banc) (ADA); *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001) (Rehabilitation Act); *Aho v. Dep't of Corr.*, 688 N.W.2d 104, 108-09 (Mich. Ct. App. 2004) (PWDCRA). Pursuant to this framework, a plaintiff must show that: (1) he engaged in protected activity; (2) the activity was known to the defendant; (3) he was subjected to an adverse action; and (4) a causal connection exists between the adverse action and the protected activity. *Walborn v. Erie Cnty. Care Facility*, 150 F.3d 584, 588-89 (6th Cir. 1998). The defendant must then articulate a legitimate, non-retaliatory reason for the adverse action, to which the plaintiff must respond with evidence of pretext. "To demonstrate pretext, a plaintiff must show *both* that the [defendant]'s proffered reason was not the real reason for its action, *and* that the . . . real reason was unlawful." *EEOC v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015) (en banc).

Without deciding whether Vamplew set forth a prima facie case of retaliation, the district court concluded that he failed to satisfy his ultimate burden of establishing that the defendants' stated reason for excluding him from the nursing program—engaging in an unsafe medical practice—was merely a pretext for retaliation. The record supports this conclusion.

In her affidavit, Zugcic stated that her decision to fail Vamplew in NUR 3020 "was based on [her] professional clinical judgment and [her] assessment of the seriousness of the conduct and the lack of judgment his conduct showed" and "had nothing to do with any complaints he may have made regarding alleged discriminatory or other allegedly unfair treatment." Zugcic testified at her deposition that Vamplew engaged in unsafe behavior when he allowed Patient G

to leave the unit and participate in activities that placed him at risk and "failed to communicate with the rest of the team what had transpired." Zugcic also explained that her decision was based on her assessment that Vamplew gave "no indication that [he] understood the significance or indeed took full responsibility for what had failed to happen." Vamplew has failed to establish that there is any dispute that he engaged in an unsafe patient practice. Indeed, Vamplew himself admitted in the statement he submitted to Zugcic and again at his deposition that he engaged in unsafe conduct. Nor has Vamplew shown that a material issue of fact exists as to the seriousness of the unsafe practice. Evidence in the record establishes that other people, including completely disinterested parties, believed that the incident presented a serious safety issue.

In an effort to establish pretext, Vamplew argues that Zugcic "made knowingly false statements to effect the student's dismissal from the college" and, thus, her stated reason for failing him in NUR 3020 was a pretext for retaliation. He contends that certain facts cited by Zugcic in the "failure report" as safety concerns were not, in fact, true, including that Patient G had received intravenous morphine as opposed to oral morphine before leaving the unit with Vamplew, that Patient G had hip precautions in place before leaving the unit, that Vamplew had engaged in no planned nursing action other than assistance with Patient G's morning care, that Patient G was anemic, and that Vamplew had made a threatening statement to May. But even assuming that there is a dispute as to these facts, the facts are not material because they were not determinative factors in Zugcic's decision to fail Vamplew. *See Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 270 (6th Cir. 2009).

None of the facts cited by Vamplew as false formed the basis for Zugcic's decision to fail Vamplew for an unsafe patient practice. Rather, Zugcic deemed Vamplew's actions unsafe because he allowed a patient to leave the unit and engage in activity without knowing whether the patient was authorized to do so, conducted a patient car transfer without having been trained to do so, and failed to communicate the patient's actions to RIM staff or his instructor. The specifics of Patient G's condition were not the driving factor behind Zugcic's decision. And Zugcic said as much at her deposition when she testified that whether Patient G had been on intravenous morphine and hip precautions was not a factor that she used to determine whether

Case 2:12-cv-14561-AC-MAR   ECF No. 104-2 filed 08/07/15   PageID.1638   Page 8 of 9         (8 of 9)
No. 14-2070
- 7 -

Vamplew would fail NUR 3020. She made clear that the "major factor" in her decision to fail Vamplew was his "poor judgment," not the nuances of Patient G's condition. Moreover, even if these facts about Patient G's condition did form part of the basis of her decision, Vamplew has failed to show that Zugcic did not honestly believe these facts to be true when they were relayed to her by RIM staff. *See Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001) ("If there is no material dispute that the [defendant] made a 'reasonably informed and considered decision' that demonstrates an 'honest belief' in the proffered reason for the adverse . . . action, the case should be dismissed since no reasonable juror could find that the [defendant]'s adverse . . . action was pretextual."). As for Vamplew's assertion that Zugcic falsely stated that he did not engage in any planned nursing action other than assistance with Patient G's morning care and that he had made a threatening statement to May, again, neither of these facts formed the basis for Zugcic's decision to fail him for unsafe patient practice.

Lastly, Vamplew argues that, because Zugcic failed to follow the policy for managing unsafe behavior by students as outlined in the course syllabus, the basis for his failure was pretextual. The syllabus for NUR 3020 included a section entitled, "Guidelines for Managing the Unsafe Undergraduate Student in Clinical Practice." This section sets forth the steps faculty members must take when unsafe behaviors have been identified and states, "The student can be excluded, if she/he demonstrates a <u>consistent</u> pattern of unsafe behavior." Vamplew argues that the defendants did not have a legitimate basis for excluding him because he did not demonstrate a consistent pattern of unsafe practices. But Zugcic testified at her deposition that, given the significance of the incident and that it had occurred late in the semester and in one of the later classes in the nursing program, she did not consider Vamplew's safety issue to be "manageable." And, in fact, the College of Nursing Handbook clearly states that a student can be excluded without warning for an unsafe practice. Vamplew's own subjective belief that the situation was manageable does not create a genuine issue of material fact as to pretext. *See Choulagh v. Holder*, 528 F. App'x 432, 437 (6th Cir. 2013).

Vamplew has failed to point to any evidence from which a jury could reasonably infer that the real reason for his exclusion from the nursing program was because he had complained about a denial of accommodations for his disability. Accordingly, we affirm the district court's judgment.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk